UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK S. ISAACS,                                    Case No. 1:12-cv-777

    Plaintiff,                                   Barrett, J.
                                                  Bowman, M.J.
vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Mark Isaacs filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. See 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") benefits in October 2008, alleging a disability on set date of March 20, 2005 due to physical and mental impairments. After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in September 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Christopher McNeil heard testimony from Plaintiff and an impartial vocational expert, Robert Breslin. On December 29, 2010, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of April 2, 2010. (Tr.

20-37). Plaintiff now seeks review of the ALJ's decision.

The record reflects that Plaintiff was 55 years old at the time of the administrative hearing and had a tenth grade education. (Tr. 40, 152). He has past relevant work as a carpenter, truck driver, and a stone masonry laborer. (Tr. 154-160).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease, gout, and shoulder tendinopathy/rotator cuff tears." (Tr. 26). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, described as follows:

> He can occasionally lift 20 pounds and frequently lift 10 pounds; push or pull 10 pounds with hand or foot controls' and sit, stand, or walk about 6 hours each in an 8 hour workday. He cannot use ladders, ropes, or scaffolds. He cannot more than occasionally stoop or crouch and cannot more than frequently balance, kneel, or crawl. He is limited to occasional overhead reaching with the bilateral upper extremities.

(Tr. 28).

Based upon the record as a whole, including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while Plaintiff is unable to perform his past relevant work, prior to April 2, 2010, other jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31). Such jobs include, cashier, cleaner/housekeeper and deli cutter. (Tr. 32). The ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and not entitled to DIB prior to April 2, 2010. *Id.* Beginning on April 2, 2010,

the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that no jobs existed in the national economy that Plaintiff could perform. Accordingly, the ALJ determined that Plaintiff was not disabled prior to April 2, 2010, but became disabled on that date. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to appropriately weigh the medical opinions in the record; and (2) failing to consider all of Plaintiff's impairments in making his RFC determination. Upon close inspection, the undersigned finds that Plaintiff's assignments are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

3

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v.*

4

*Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## B. The ALJ's Decision is Substantially Supported and should be Affirmed

*1. Relevant Evidence*

Plaintiff has a long history of low back and neck pain. He first treated with Brent Bader, M.D., from March 1990 through February 2008, and then switched to treatment by Wendy Soto, D.O., from September 2008 going forward. (Tr. 221-228, 231-233, 251-253, 275-309). On January 6, 2009, Plaintiff had an x-ray of his lumbar spine which revealed degenerative changes at L5-S1. At that time, Plaintiff also had reduced range of motion secondary to pain and a positive straight leg raise test. (Tr. 240, 242). A cervical spine CT done on May 6, 2010 revealed a disc protrusion and spurring at C3-4 (Tr. 312-313). The record further indicates that Plaintiff suffers from gout and other ankle and foot pain related to ankle sprains,

Plaintiff also has a history of shoulder pain due to rotator cuff tears. An MRI of both shoulders on September 10, 2008 revealed that he has a moderate-sized full-thickness rotator cuff tear involving the entire supraspinatus tendon (with tendinous retraction) and a suspected infraspinatus linear intrasubstance tear in his left shoulder, as well as a small

full-thickness rotator cuff tear at the anterior leading edge of the supraspinatus tendon insertion of his right shoulder (Tr. 226-227). In both shoulders, there was evidence of infraspinatus tendinopathy and muscle atrophy. *Id.*

Additionally, at the administrative hearing, Plaintiff's testified that he suffers from depression, but has never received any mental health treatment. Plaintiff further testified that he experiences asthma attacks once every two months requiring hospitalization.

### 2. Evaluation of the Opinion Evidence

Plaintiff's first assignment of error asserts that the ALJ erred in failing to give controlling weight to the opinions of Dr. Soto, Plaintiff's treating physician. Plaintiff's contention is unavailing.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.

6

2004). . A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the

7

requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision indicates that he properly considered Dr. Soto's findings in accordance with agency regulations and controlling law.

In December 2008, Dr. Soto opined that Plaintiff was able to sit, stand, and walk but could only do a limited amount of lifting, pulling, pushing, and lifting above the head. (Tr. 233). She did not specify to what extent Plaintiff was limited in those activities. Dr. Soto also noted that Plaintiff's mental ability was unaffected. (Tr. 233).

Five months later, in May 2009, Dr. Soto provided another medical opinion. (Tr. 252). This time, Dr. Soto opined that Plaintiff could work at some point, as long as the work did not require heavy lifting or reaching over the head. (Tr. 252). Dr. Soto explained that Plaintiff had no problems manipulating his fingers or using his lower arm. (Tr. 252). She also noted that Plaintiff could walk and stand, and "stoop to some extent- maybe with some limitations." (Tr. 252). Dr. Soto did not specify how much Plaintiff could lift, how long he could walk or stand, or to what extent he could stoop.

In August 2010, a little more than a year after her May 2009 opinion, Dr. Soto opined that Plaintiff could not maintain attention and concentration for simple work tasks, could walk only 2-3 city blocks without rest or severe pain, and would need to change positions at-will and take unscheduled breaks. (Tr. 396-97). She also said that Plaintiff could not lift more than ten pounds and should avoid respiratory irritants due to asthma. (Tr. 397-98). Dr. Soto also opined that Plaintiff's depression would affect his physical condition. (Tr. 395).

In formulating his RFC finding, the ALJ did not credit all of Dr. Soto's findings. In so concluding, the ALJ found that Dr. Soto's findings were not fully credible because they were vague, inconsistent with her own findings and were not supported by the evidence of record.

8

Notably, with respect to Dr. Soto's December 2008 opinion, the ALJ noted that although Dr. Soto determined that Plaintiff could do only "limited" lifting, pulling, pushing and lifting above head, Dr. Soto did not specify the extent of Plaintiff's limitations in these areas. (Tr. 30). Similarly in May 2009, Dr. Soto found that Plaintiff may be able to stoop to some extent with some limitations, however the ALJ noted that Dr. Soto did not explain the limitations in stooping that Plaintiff "may" have, as Plaintiff had no impairment that would be expected to result in stooping limitations. (Tr. 30).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983); see also, *Bogle v. Sullivan*, 998 F.2d 342 (6th Cir.1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.*

Furthermore, the ALJ properly discounted Dr. Soto's August 2010 opinion because it was not consistent with her previous two statements and she had made no new findings to justify her enhanced restrictions. As detailed by the Commissioner, in December 2008, Dr. Soto noted that Plaintiff's mental ability was "unaffected." (Tr. 233). Five months later, in May 2009, Dr. Soto explained that she was not treating Plaintiff for psychiatric issues and that in her opinion, he had "no deficits in the ability to concentrate, think clearly, communicate and relate with others, follow instructions, take care of personal needs, or function independently." (Tr. 252). However, in August 2010, just over a year after the May

2009 opinion, Dr. Soto concluded that Plaintiff's depression was so severe that it interfered with his attention and concentration and prevented him from performing simple work tasks (Tr. 395). Yet, Dr. Soto provided no explanation for the change in her opinion. See 20 C.F.R. § 404.1527(b)(3) (explaining that "[t]he better explanation a source provides for an opinion, the more weight we will give that opinion".); *see also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ did not err in declining to refer to [the treating physician's] opinion because [the treating physician] originally opined that claimant could perform sedentary work and did not provide any objective medical evidence to support his change of heart.") (citing *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988)).

Plaintiff asserts that the ALJ improperly discredited Dr. Soto's opinion that depression would affect Plaintiff's physical condition. (Tr. 30). Plaintiff notes that the law does not allow an ALJ to disregard the opinion of a treating doctor about limitations from psychological impairments on the grounds that she is not a mental health professional. *See Marsh v. Astrue,* No. 5:10-cv-438, 2011 WL 480927, at *5 (N.D. Ohio Oct. 11, 2011); *see also Price v. Comm'r of Soc. Sec.*, No. 1:08-cv-15, 2009 WL 973496, at *12 (S.D. Ohio Apr. 19, 2009). However, as detailed above, the ALJ did not discredit Dr. Soto's findings relating to depression because she was not a mental health professional, such findings were discredited because they were not properly supported by the evidence or record and were inconsistent with Dr. Soto's previous assessments of Plaintiff's mental health.

Plaintiff further asserts that Dr. Soto's opinions are well-supported by the objective evidence. Namely, an April 2001 MRI of Plaintiff's left ankle revealed what Dr. Gula described as a "multiplicity of problems as related to soft tissue inflammatory processes and micro-fractures as related to the talus-calcaneus." (Tr. 403, 409). The radiologist described

10

the MRI findings as consistent with inversion ankle injury-associated low-grade sprains of the ATAF, PTAF, and CFL, along with osseous contusions to multiple bones, including the lateral talus, calcaneus, and sinus tarsi. (Tr. 409). Plaintiff also notes that the record indicates that he sought relief for chronic back pain and MRI of his shoulders revealed a rotator cuff tear, tendinopathy and muscle atrophy. Plaintiff fails to indicate how such evidence supports the functional limitations outlined by Dr. Soto, and more importantly, he fails to establish that the ALJ improperly evaluated such evidence and the his RFC is not supported by substantial evidence.

To the contrary, the ALJ's decision clearly indicates that he properly evaluated the evidence of record in formulating Plaintiff's RFC. Notably, the ALJ explained that Plaintiff reported to Dr. Soto that his pain was well controlled with Percocet. (Tr. 29, citing Tr. 282). The ALJ also noted that, in May 2009, Dr. Soto explained that Plaintiff did not have weakness or atrophy in his upper extremities despite alleging weakness. (Tr. 29, citing Tr. 251). The ALJ discussed Dr. Swedberg's assessment noting that Plaintiff walked with a normal gait without the use of ambulatory aids, and was comfortable sitting. (Tr. 29, citing Tr. 239). Dr. Swedberg also indicated that there was no evidence of muscle atrophy, and that Plaintiff's reflexes were normal. (Tr. 239). The ALJ noted that even though Plaintiff complained of back pain, his examinations were essentially normal. (Tr. 29). The ALJ also noted Plaintiff's shoulder impairments and accommodated his shoulder symptoms by limiting Plaintiff to occasional overhead reaching. (Tr. 28).

As outlined above, the issue is not whether substantial evidence exists in the record to support a different conclusion but instead whether the Commissioner's decision is substantially supported. *See Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453

n.4 (6th Cir. 1986) (holding that where substantial evidence supports the Secretary's decision denying benefits, it is conclusive, even thought the record may also contain substantial evidence in support of the claimant's position). Here, Plaintiff has failed to show that the ALJ's evaluation of Dr. Soto's opinions are not supported by substantial evidence.

Additionally, Plaintiff argues that the ALJ committed reversible error because he did not state how much weight he gave to the opinions of the state agency physicians, Dr. Tinianow and Dr. McCloud. Dr. Tinianow reviewed Plaintiff's medical records in May 2009. (Tr. 243-50). Dr. Tinianow acknowledged that Plaintiff had bilateral rotator cuff tears, hypertension, chronic back pain, decreased range of motion in his shoulders and pain to palpation. (Tr. 245). Dr. Tinianow explained that Plaintiff's January 2009, physical examination showed that Plaintiff had a normal gait, was comfortable in the seated and supine positions, had clear lungs, no muscle atrophy, normal sensation and brisk reflexes. (Tr. 244-45). Dr. Tinianow also noted that Plaintiff had 4/5 strength in his shoulders, decreased range of motion, and slightly diminished knees. (Tr. 244-45). Based upon his examination findings, Dr. Tinianow concluded that Plaintiff was capable of performing a limited range of light work, as long as he did not climb ladders, ropes or scaffolds; climb ramps and stairs on more than an occasional basis; stoop or crouch on more than an occasional basis; or balance, kneel and crawl on more than a frequent basis. (Tr. 245). Dr. Tinianow also noted that Plaintiff should not reach overhead on more than an occasional basis because of the problems associated with his rotator cuff tears. (Tr. 246).

A few months after Dr. Tinianow issued her opinion, Dr. McCloud reviewed Plaintiff's medical records, and affirmed Dr. Tinianow's report. (Tr. 254). Dr. McCloud explained that he considered the treatment notes from Dr. Soto and Plaintiff's primary care physician, as

well as Dr. Swedberg's January 2009 report, but that there was no new evidence since the prior decision that would alter Dr. Tinianow's RFC. (Tr. 254). The ALJ determined that the medical opinions of Dr. Tinianow and Dr. McCloud adequately accommodated Plaintiff's back pain, infrequent gout flares and shoulder pain. (Tr. 30-31). Although the ALJ did not state what weight he was giving to their opinions, he incorporated their findings into Plaintiff's RFC and explained that their opinions accommodated Plaintiff's shoulder, back and gout-related problems. (Tr. 30-31). Because the ALJ's RFC was consistent with Dr. Tinianow's and Dr. McCloud's opinions, any error the ALJ committed in not mentioning the weight he gave to their opinions was harmless.

Notably, the ALJ's decision and his analysis of the state agency physicians findings allows this Court to conduct a meaningful review and to determine the weight provided to the opinion. *Rogers*, 486 F.3d at 242-243; *see also Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x. 462 (6th Cir. 2006) (finding that a failure to explicitly indicate the weight afforded a doctor's opinion to be harmless error where the goal of providing good reasons was met). Further, while the ALJ did not discuss point by point each factor under 20 C.F.R. § 404.1527(d), such a detailed analysis is not required. *Francis*, 414 F. App'x. at 804. Moreover, a review of the ALJ's decision demonstrates that the ALJ did consider the factors set forth in 20 C.F.R. 404.1527(d) in his analysis. For these reasons, the undersigned finds that the ALJ's evaluation of the opinion evidence is substantially supported and should not be disturbed.

    2. *ALJ's consideration of Plaintiff's Asthma*

Plaintiff's next assignment of error asserts that the ALJ failed to consider all of Plaintiff's impairments. Specifically, Plaintiff contends that the ALJ failed to include any

13

limitations relating to his asthma, including limiting Plaintiff to working in a "clean air environment." Plaintiff's contention lacks merit.

The ALJ found that Plaintiff's asthma was not a severe impairment. In so concluding the ALJ noted that the evidence indicated that Plaintiff did not have frequent or significant asthma exacerbations and that when Plaintiff was compliant with treatment, his asthma appeared to be well-controlled with inhalers. (Tr. 27). This finding is also consistent with Dr. Soto's May 2009 opinion, which states that Plaintiff's "asthma is also well controlled with his inhaler." (Tr. 252). The ALJ also noted that Plaintiff's respiratory problems were not clearly related to asthma. Moreover, while the record indicates that Plaintiff was treated for asthma, Plaintiff fails to show that this was severe enough to result in functional limitations. It is well established that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment).

Furthermore, as noted by the Commissioner, assuming arguendo, that Plaintiff needed a restriction against exposure to environment irritants, the ALJ's failure to include such a restriction would be a harmless error because the jobs identified by the vocational expert do not require exposure to atmospheric conditions, weather, extreme cold, extreme heat, or wet and humid conditions. *See* Dictionary of Occupational Titles, 211.462-010, 323.687-014, 316.684-014. In light of the foregoing, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's

decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                                           *s/Stephanie K. Bowman*
                                                  Stephanie K. Bowman
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK S. ISAACS,

    Plaintiff

vs

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant

Case No. 1:12-cv-777

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).